# United States District Court
# Central District of California

| | |
|---|---|
| WILLIAM B. COWEN,<br><br>    Petitioner,<br><br> v.<br><br>STAR FISHERIES INC,<br><br>    Respondent. | Case № 2:17-cv-02679-ODW-JEM<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY INJUNCTION [1]** |

## I. INTRODUCTION

Before the Court is the Regional Director of the National Labor Relations Board's 21st Region's (hereinafter "Petitioner") petition for a temporary injunction. (ECF No. 1.) Petitioner alleges that Respondent Star Fisheries Inc. ("Star") has engaged in unfair labor practices against employees affiliated with Teamsters Local 572, International Brotherhood of Teamsters (hereinafter "the Union"). The Union also appears as an amicus curiae in this action. (*See* ECF No. 22.) For the reasons discussed below, the Court **GRANTS** the petition for a temporary injunction.

## II. FACTUAL BACKGROUND

Star processes and ships fresh and frozen seafood. (Pet. 2.) It has a longstanding relationship with the Union, which has represented about 27 drivers and

six dockworkers at Star for over 20 years. (*Id.*) However, discord arose between the Union and Star after Star's long-standing owner died and his wife became president and co-owner of the company. (*See* Mem. in Support of Pet. ("Mem.") 4, ECF No. 3.) In late 2013, shortly after the change in ownership, the current collective-bargaining agreement between Star and the Union ("CBA") was nearing its expiration date. (*Id.*) The Union attempted to open negotiations to renew the CBA. (*Id.*) Star responded by sending out "Notice of Termination of Agreement" letters to various Union employees. (Pet. Ex. 4 at 60–61, 252, 254, ECF No. 1-1, 1-2.) These letters indicated that Star was not interested in renewing the Union contracts. (*See id.*) However, once the Union informed Star that it was legally obligated to negotiate, the parties bargained unsuccessfully during 2014 and 2015. (Mem. 5.) On December 18, 2015, the Union went on strike to express frustration with the course of the negotiations. (*Id.*) The strike lasted through July 7, 2016. (*Id.*) Petitioner contends that at some point between the end of 2016 and early 2016, the strike was converted to an unfair labor practice strike. (Pet. 3.)

Petitioner claims that during the strike, Star committed numerous unfair labor practices, including: making coercive statements to strikers in an attempt to influence them to renounce the Union; hiring replacement drivers at cost (buying out contracts from staffing companies); converting those temporary replacements to permanent hires; unilaterally withdrawing from the Union's pension and health and welfare funds; and refusing to reinstate any striking workers. (*See generally* Pet.) These allegations of unfair practices correspond with various sections from the National Labor Relations Act ("the Act").

Between June 16, 2016, and December 28, 2016, the Union filed several charges of unfair labor practices against Star, which led to the Petitioner's instigation of a formal hearing before the National Labor Relations Board ("the Board"). (*See* Pet.) That hearing is currently set for June 12, 2017. (*Id.*)

## III. LEGAL STANDARD

Petitioner seeks an injunction pursuant to Section 10(j) of the Act (29 U.S.C. § 160(j)), which authorizes the Board to "petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." The district court should look to traditional equitable principles to determine whether injunctive relief is appropriate in the interim. This means that Petitioner must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in favor of the injunction; and (4) that an injunction is in the public interest. *Frankl v. HTH Corp.*, 650 F.3d 1334, 1355 (9th Cir. 2011). These elements are evaluated on a sliding scale; *i.e.*, if the showing of irreparable harm increases, the required showing for likelihood of success decreases. *Alliance for the Wild Rockies v. Cotrell*, 632 F.3d 1127, 1131–34 (9th Cir. 2011).

## IV. DISCUSSION

Each of the traditional equitable principles weigh in favor of Petitioner's request, particularly the likelihood of success on the merits factor.

### A. Likelihood of Success on the Merits

It appears all but guaranteed that Petitioner—and the Union—will succeed on the merits before the Board. Likelihood of success in this type of action "is a function of the probability that the Board will issue an order determining that the unfair labor practices alleged by the Regional Director occurred and that the Ninth Circuit would grant a petition enforcing that order." *Frankl*, 650 F.3d at 1255. Petitioner need not prove that Star committed the unfair labor practices; to require such a showing would be to conflate likelihood of success with success itself. *See Univ. of Tex v. Camenisch*, 451 U.S. 390, 394 (1981).

| | |
|---|---|
| 1 | Here, Petitioner submits evidence in the form of affidavits and declarations |
| 2 | detailing Star's unfair behavior during the strike. (*See generally* Pet. Exs. 1–4, ECF |
| 3 | Nos. 1-1, 1-2, 1-3, 1-4.) Star does not refute this evidence or provide an opposition to |
| 4 | the argument that Petitioner is likely to succeed on the merits. (*See* Opp'n, ECF No. |
| 5 | 15.) Star instead focuses on the "irreparable injury" portion of the analysis. This |
| 6 | ignores the "sliding scale" aspect of the inquiry; the fact that there is little contest on |
| 7 | the issue of whether Petitioner will eventually succeed on the merits means that the |
| 8 | required showing for irreparable injury is lessened. *See Alliance for the Wild Rockies*, |
| 9 | 632 F.3d at 1131–34. |
| 10 | Given that there is little to no argument or evidence to contradict Petitioner's |
| 11 | allegations of Star's unfair labor practices (other than their characterization; Star |
| 12 | claims that it hired replacement drivers only to "survive," (Opp'n 2)), Petitioner |
| 13 | appears to have a high likelihood of success on the merits. The Union's amicus brief |
| 14 | provides a useful summation: "[Star] embarked on a campaign to unlawfully eliminate |
| 15 | the Union, in part by hiring replacement workers it labeled 'permanent' after-the-fact, |
| 16 | under the misguided belief that the strikers would then have no rights to return to their |
| 17 | prior positions." (Amicus Br. 4–5, ECF No. 21-1.) Based on the evidence available |
| 18 | to this Court, this description does appear to correctly characterize Star's actions. As |
| 19 | such, this factor tilts very strongly in favor of entering an injunction. |

**B.     Likelihood of Irreparable Harm in the Absence of Preliminary Relief**

| | |
|---|---|
| 21 | Star places great weight on the fact that the Board will hear this action on June |
| 22 | 12, 2017, arguing that Petitioner has not shown that it will be harmed in the short time |
| 23 | leading up to that date. (Opp'n 5.) However, Star has not convinced the Court that |
| 24 | the matter will be resolved anytime soon, despite the imminent hearing date. In |
| 25 | reality, months or years might pass before entry of a final Board Order. The reason |
| 26 | for this is that the Administrative Law Judge who will hear the case does not issue a |
| 27 | Board Order—he or she will merely submit a recommendation to the Board. 29 |
| 28 | C.F.R. § 102.45(a). After the recommendation is submitted, any party can file an |

exception to it. 29 C.F.R. § 102.46(a). Therefore, the proximity of the hearing date is not a bar to this factor falling in Petitioner's favor.

Petitioner argues that the Union has suffered devastating blows from Star's unfair labor practices. (*See* Mem. 21.) Former Union workers have lost interest and faith in the Union, and the Union's bargaining power has been decimated. Those employees—who under the Act had a statutory right to their job and benefits—are now without their jobs, insurance, or benefits they had while working for Star.

Star's arguments that the alleged harm can be completely cured by compensatory relief are unavailing. (*See* Opp'n 7.) This point ignores the fact that the harm is not solely to individual workers. Star's unfair practices have weakened the Union itself, and as an institution damages will not make it whole. In order for it to survive, Star's original workers must be reinstated so that they will provide their support to the Union and bargaining power will be restored. Thus, the irreparable harm factor weighs in favor of granting Petitioner's request.

## C. Balance of Equities

In assessing this factor, a court must determine "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Star points out that because it has already hired replacements, it does not have the capacity to reinstate all of the strikers who lost their jobs. (Opp'n 13.) This, it says, tips the balance of equities against granting the injunction, since doing so would disrupt Star's business and displace the replacement workers.

The Court agrees that the situation is unfortunate with regard to any replacement workers who will now be displaced. However, the Ninth Circuit has made clear that in the context of a petition for 10(j) relief, "the rights of the employees who were discriminatorily discharged are superior to the rights of those whom the employer hired to take their places." *Aguayo for and on Behalf of the N.L.R.B. v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988). With case law directly on

point, there can be no doubt that the balance of equities tilts in favor of granting the injunction, even if it means displacing the replacement workers.

**D.     Public Interest**

On this final factor, Petitioner argues that because Section 10(j) was enacted to thwart unfair labor practices and provide preliminary relief where warranted, doing so here is in the public interest in order to further the goals of the statute. (Mem. 24–25.) Star makes no argument in its opposition regarding the public interest. (*See generally* Opp'n.) Therefore, this factor tilts slightly in Petitioner's favor.

On the whole, each one of the traditional equitable principles weighs in Petitioner's favor. The Court is convinced that preliminary relief is appropriate and necessary here.

## V.     CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Petition for a Preliminary Injunction.

**IT IS SO ORDERED.**

May 12, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**